UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

SHAWN LUCHINSKI,

    Plaintiff,

v.                                                           Case No. 24-cv-0457-bhl

MARY MOORE,

    Defendant.

## DECISION AND ORDER

    Plaintiff Shawn Luchinski, an inmate at the Oshkosh Correctional Institution, is representing himself in this 42 U.S.C. §1983 action. He is proceeding on an Eighth Amendment medical care claim based on an assertion that Defendant Mary Moore denied his requests for nonmetal handcuffs and a First Amendment retaliation claim based on an assertion that Moore discontinued his prescription for bupropion. On April 11, 2025, Moore filed a motion for summary judgment. For the reasons discussed below, the Court will grant the motion and dismiss this case.

## BACKGROUND

    At the relevant time, Luchinski was an inmate housed at Waupun Correctional Institution, where Moore was employed as an advanced nurse prescriber. On January 16, 2020, Luchinski submitted a request to the Special Needs Committee for the use of nonmetal cuffs because the metal cuffs dug into his wrists. The Special Needs Committee consulted with Moore to determine whether there was a medical reason to allow Luchinski to use nonmetal cuffs. Moore determined that there was no medical indication for the accommodation, so the decision should be a matter of balancing the institution's security concerns. The Special Needs Committee denied the request. Dkt. No. 23 at ¶¶1-2, 22-25.

    A couple of months later, on March 2, 2020, Luchinski was seen by Moore to follow up on his chronic pain conditions. Luchinski asked Moore if vinal cuffs could be used for offsite visits. He reported that he had right wrist pain when he was cuffed, and Tylenol and ibuprofen provided inadequate relief. Moore informed Luchinski that she would talk to security and the

Special Needs Committee about his request. There is no formal record of Moore raising the issue, but she asserts that she would have raised the issue. Luchinski did not make another request for nonmetal handcuffs until nearly a year later. Dkt. No. 23 at ¶¶26-31.

Meanwhile, in January 2021, Luchinski's psychological services unit provider asked Moore to order a blood test to measure the bupropion levels in Luchinski's blood. Bupropion, which has a generic name of Wellbutrin, is an antidepressant. Luchinski's bupropion level came back as undetectable. Moore explains that it takes about four to six days for bupropion to leave a person's system, which suggested that Luchinski, who had been receiving the medication daily, was misusing the medication. On February 4, 2021, the psychological services unit provider discontinued Luchinski's bupropion prescription based on misuse. Moore explains that, besides placing the blood test order, she was not involved in prescribing or discontinuing the medication. Dkt. No. 23 at ¶¶32-43.

Luchinski was seen by a nurse on February 4, 2021, about a week after the bupropion was discontinued. He referenced a rash on his hands, but he primarily focused on his back pain and the discontinuation of the bupropion, which he had been taking for about ten years. He did not mention having pain in his hands or wrists. Luchinski was seen by Moore about a month later, on March 8, 2021. Luchinski reported that the rash on his hands resolved after he took a course of prednisone for foot pain. Dkt. No. 23 at ¶¶44-47; Dkt. No. 25-1 at 9, 22.

On March 11, 2021, three days after his appointment with Moore, Luchinski asked to see nursing staff for redness and a rash on both of his wrists, which Luchinski attributed to being cuffed with metal handcuffs. Luchinski requested that only nonmetal handcuffs be used. A nurse messaged Moore about Luchinski's request. Moore responded that Luchinski did not meet the criteria for vinyl cuffs because he has no documented allergy to nickel. Moore explains that the rash could have been from the friction of the handcuffs against Luchinski's wrists. She asserts that, while mildly uncomfortable, such a rash would be treated with a topical cream to soothe the irritation. A nurse examined Luchinski the next day, at which time Luchinski requested that he be seen by a different provider. The nurse did not observe any rash on Luchinski's wrists or ankles, and Luchinski did not complain of pain in his wrists. The nurse instructed security to use cuffs that fit Luchinski. Dkt. No. 23 at ¶¶48-61.

On March 16, 2021, a nurse received a health services request from Luchinski requesting special cuffs because of the rash he developed on March 11. The nurse referred his request to the

Special Needs Committee. The next day, on March 17, 2021, Luchinski returned from an offsite appointment and informed a nurse that he had red, raised skin on his wrists. Luchinski again requested a medical restriction for special cuffs. The Special Needs Committee denied Luchinski's request on March 18, 2021 because he did not meet the criteria defined in the policy. Luchinski did not have a documented allergy to nickel or any other medical condition that would warrant nonmetal cuffs. Dkt. No. 23 at ¶¶62-69.

On March 21, 2021, Luchinski wrote to Robert Weinman, the health services unit manager, and requested nonmetal cuffs because of the rash he developed on March 11 and 17, 2021. Weinman forwarded Luchinski's request to the Special Needs Committee. On March 24, 2021, Luchinski was seen by a nurse who noted a rash on both of Luchinski's hands, although there is no record of Luchinski complaining about pain in his wrists or hands. On April 1, 2021, the Special Needs Committee denied Luchinski's request because he still did not meet the criteria defined in the policy. Dkt. No. 23 at ¶¶70-78.

On April 4, 2021, the Special Needs Committee received another request from Luchinski for nonmetal cuffs. A nurse highlighted that Luchinski had not had a nickel RAST test to determine whether he had a nickel allergy; however, she also noted that he had only two documented incidents of a rash after being cuffed. The Special Needs Committee again denied the request. A few days later, Moore evaluated Luchinski, who told her that the rash on his hand was coming back. Moore noted a few, small, red, raised bumps on Luchinski's fingers and palms, which she noted were consistent with eczema. Luchinski insisted that he had an allergy to the handcuffs and again requested that nonmetal cuffs be used on him. Moore noted that Luchinski had been at Waupun for sixteen years and that he had no prior reports of an allergy to or rash from metal handcuffs. Luchinski began to argue with Moore, so she terminated the appointment. Dkt. No. 23 at ¶¶79-90.

On May 11, 2021, Luchinski was seen offsite for a nerve conduction study of his median, ulnar, and radial nerves. The specialist diagnosed Luchinski with moderate left carpal tunnel syndrome and mild right carpal tunnel syndrome. Upon return to the institution, Luchinski told a nurse that he had some red areas on his wrists, which he attributed to the metal cuffs. A couple days later, Luchinski wrote to Weinman about his interactions with Moore and his belief that he had developed carpal tunnel syndrome as a result of being incorrectly cuffed while being transported to his offsite appointments. Moore explains that from September 16, 2020 through

November 4, 2022, Luchinski was transported offsite about twelve times for medical appointments. She further explains that, based on her medical training and experience, being cuffed twelve times over the course of two years would not cause carpal tunnel. Dkt. No. 23 at ¶¶91-100.

Weinman responded to Luchinski on May 17, 2021, and informed him that he would forward the new diagnosis to the Special Needs Committee along with Luchinski's request. It is unclear why, but the Special Needs Committee never rendered a decision on this request. On July 20, 2021, Moore examined Luchinski to discuss a plan for his carpal tunnel syndrome. She instructed him to use ibuprofen for his pain and informed him that she would order wrist splints for both hands. She also informed him that any referral to an orthopedic surgeon for possible surgery for his carpal tunnel syndrome would have to wait until after a scheduled surgery for his shoulder. There is no indication in Luchinski's medical records that he requested nonmetal handcuffs at that time. Dkt. No. 23 at ¶¶101-08.

Weinman and Luchinski corresponded about the cancellation of his bupropion prescription and need for pain medication. Luchinski accused Moore of lying about not being able to prescribe a particular medication for his pain. He also complained that Moore, rather than his psychiatrist, had ordered the blood draw that led to his bupropion being discontinued. Finally, he stated that Moore was still denying his request for nonmetal cuffs. Weinman informed Luchinski that Moore's statements about the "restricted and highly abused" pain medication were correct and directed him to raise his issues with the bupropion cancellation with psychiatry staff. He also instructed Luchinski to raise the cuff issue with his provider at his next appointment. Dkt. No. 23 at ¶¶109-13.

Moore stopped working at Waupun in April 2022. On April 13, 2022, Luchinski was seen by his new provider for a follow up on his carpal tunnel condition. The new provider did not note that Luchinski requested nonmetal cuffs, but he discussed pain control options with Luchinski and encouraged him to lose two pounds per week. On June 14, 2022, Luchinski submitted a health services request complaining that he now has "permanent nerve damage and carpal tunnel in both wrists" because Moore refused to recommend the use of nonmetal cuffs. On September 6, 2022, Luchinski's new provider recommended alternative restraints for Luchinski because of his comorbid carpal tunnel and obesity. Dkt. No. 23 at ¶¶113-18.

## LEGAL STANDARD

Summary judgment is appropriate when the moving party shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). "Material facts" are those under the applicable substantive law that "might affect the outcome of the suit." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute over a "material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*. All reasonable inferences are construed in favor of the nonmoving party. *Foley v. City of Lafayette*, 359 F.3d 925, 928 (7th Cir. 2004). The party opposing the motion for summary judgment must "submit evidentiary materials that set forth specific facts showing that there is a genuine issue for trial." *Siegel v. Shell Oil Co*., 612 F.3d 932, 937 (7th Cir. 2010) (citations omitted). "The nonmoving party must do more than simply show that there is some metaphysical doubt as to the material facts." *Id*. Summary judgment is properly entered against a party "who fails to make a showing sufficient to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial." *Parent v. Home Depot U.S.A., Inc.*, 694 F.3d 919, 922 (7th Cir. 2012) (internal quotations omitted).

## ANALYSIS

Luchinski asserts that Moore violated the Eighth Amendment when she repeatedly refused to identify a medical justification to support his request for nonmetal cuffs. He further contends that her refusal resulted in the Special Needs Committee denying his requests. Luchinski also asserts that Moore retaliated against him after he complained about her discontinuance of his bupropion prescription, which he had been taking for a decade.

To prevail on a medical care claim under the Eighth Amendment, a plaintiff must prove that a prison official intentionally disregarded a known, objectively serious medical condition that posed an excessive risk to the plaintiff's health. *Perez v. Fenoglio*, 792 F.3d 768, 777 (7th Cir. 2015) (citations omitted). It is not enough that the plaintiff disagrees with the medical provider's chosen course of treatment. *Johnson v. Doughty*, 433 F.3d 1001, 1013 (7th Cir. 2006); *Estelle v. Gamble*, 429 U.S. 97, 107 (1976). The challenged decision must deviate so substantially from accepted professional judgment that no reasonable medical provider would reach the same judgment. *Arnett v. Webster*, 658 F.3d 742, 751 (7th Cir. 2011).

Based on the record, no jury could reasonably conclude that Luchinski suffered from an objectively serious medical condition when Moore failed to identify a medical reason warranting

the use of nonmetal handcuffs. Luchinski agrees that on January 16, 2020, he requested nonmetal cuffs because the metal cuffs dug into his writs. On March 2, 2020, he requested nonmetal cuffs because he had some right wrist pain while he was handcuffed. Luchinski did not reassert his request for nonmetal cuffs until nearly a year later, and he never again complained of wrist pain.

From this point forward, Luchinski's handcuff complaints related to a rash, which he believed was caused by an allergic reaction to the metal cuffs. On March 11, 2021, he complained that the metal cuffs caused a rash and redness on his wrists and hands, but a nurse who evaluated Luchinski the next day did not observe any rash. About a week later, Luchinski complained for a second time of red, raised skin on his wrists after being cuffed. Moore concluded that the "rash" was likely caused by the friction of the cuffs against Luchinski's wrists. Per the undisputed record, the irritation resulted only in redness and slightly raised skin on Luchinski's wrists, resolved quickly, and had no lingering effects. Moore explains that irritation such as this, while mildly uncomfortable, can be treated with a topical cream to soothe the irritation.

It is well settled that not "every ache and pain or medically recognized condition involving some discomfort can support an Eighth Amendment claim." *Guiterrez v. Peters*, 111 F.3d 1364, 1372 (7th Cir. 1997). And no jury could reasonably conclude that a relatively minor skin condition that is treatable with ointment and that quickly resolves is an objectively serious medical condition. *See Thomas v. Blackard*, 2 F.4th 716, 722 (7th Cir. 2021).

Luchinski asserted in his amended complaint that the infrequent use of metal cuffs (only twelve times in more than two years) caused him to develop carpal tunnel, but he presents no evidence to support this conclusion. *See Beardall v. CVS Pharmacy, Inc.*, 953 F.3d 969, 973 (7th Cir. 2020) ("Summary judgment is the proverbial put up or shut up moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of the events."). Moreover, Luchinski *never* complained of nerve pain in his wrists from the metal cuffs; he only ever complained of discomfort from the cuffs digging into his wrists and causing a "rash." In other words, the fact that Luchinski was later diagnosed with carpal tunnel is irrelevant to the consideration of whether he suffered from an objectively serious medical condition because the only condition Luchinski complained of when requesting nonmetal cuffs was the minor skin irritation.

Even if Luchinski had presented evidence of an objectively serious medical condition, no jury could reasonably conclude that Moore was deliberately indifferent to that condition. Moore

6

explains that in Luchinski's sixteen years at the institution before he requested nonmetal cuffs, Luchinski never complained of a rash or other allergic reaction to the cuffs, and he had only two documented incidents of skin irritation. Moore therefore reasonably concluded that Luchinski's discomfort arose not from a reaction to the metal in the cuffs, but from the fact that the cuffs did not adequately accommodate Luchinski's large frame. Others appear to have agreed with Moore's assessment, with one nurse telling security to use cuffs that fit, and a provider referencing Luchinski's obesity in addition to a recent carpal tunnel diagnosis. Accordingly, no jury could reasonably conclude that Moore was deliberately indifferent to Luchinski's *medical* needs when she exercised her professional judgment and decided there was no medical reason to warrant metal cuffs and that any decision regarding nonmetal cuffs should be made by security. As Moore explains, Waupun Correctional is a maximum security prison, so any benefit to issuing a cuff alternative (in other words, the relief of minor discomfort and skin irritation) must be weighed against security concerns. Dkt. No. 23 at ¶122. In short, Luchinski would have preferred nonmetal cuffs, but he was not entitled to his preferred treatment, only to adequate care, and while the use of metal cuffs may have been uncomfortable, nothing in the record suggests that Moore's decision not to recommend an alternative amounted to a constitutional violation. *See Johnson v. Doughtry*, 433 F.3d 1001, 1013 (7th Cir. 2006).

Moore is also entitled to summary judgment on Luchinski's retaliation claim. To prevail on a retaliation claim, a plaintiff must show that "(1) he engaged in activity protected by the First Amendment; (2) he suffered a deprivation that would likely deter First Amendment activity in the future; and (3) the First Amendment activity was at least a motivating factor in the defendant's decision to take the retaliatory action." *Perez v. Fenoglio*, 792 F.3d 768, 783 (7th Cir. 2015) (quoting *Bridges v. Gilbert*, 557 F.3d 541, 546 (7th Cir. 2009)).

Moore agrees that Luchinski satisfies the first and second elements of the standard. The record shows that Luchinski engaged in protected activity when he submitted complaints about Moore. It also shows that Luchinski suffered a deprivation that would likely deter future protected activity when his long-standing prescription for bupropion was discontinued. But no jury could reasonably conclude that Luchinski satisfies the third element because the record confirms that Moore had no personal involvement in the decision to discontinue the bupropion.

A defendant is liable for damages under §1983 only if she was personally responsible for the deprivation of a constitutional right, meaning that the deprivation occurred at the defendant's

7

behest or with her knowledge and consent. *See Williams v. Shah*, 927 F.3d 476, 482 (7th Cir. 2019). Moore explains that psychiatry staff suspected Luchinski was misusing the medication, so his psychiatric provider asked Moore to order a blood draw to test his bupropion levels. Moore's only involvement was ordering the blood draw; she played no role in the decision to discontinue the medication. Under §1983, Moore cannot be liable for a decision she did not make.

Luchinski argues that Moore must have sabotaged the test, but he offers no evidence to allow a jury to reasonably reach such a conclusion. Luchinski's speculation that Moore engaged in wrongdoing is insufficient to create a triable issue of fact. *See Trentadue v. Redmon*, 619 F.3d 648, 652-53 (7th Cir. 2010) ("neither speculation nor generic challenges to a witness's credibility are sufficient" to establish a triable factual issue). Moore is therefore entitled to summary judgment.

**IT IS THEREFORE ORDERED** that Defendant's summary judgment motion (Dkt. No. 21) is **GRANTED** and this action is **DISMISSED**. The Clerk of Court is directed to enter judgment accordingly.

Dated at Milwaukee, Wisconsin on December 10, 2025.

s/ *Brett H. Ludwig*
BRETT H. LUDWIG
United States District Judge

This order and the judgment to follow are final. Plaintiff may appeal this Court's decision to the Court of Appeals for the Seventh Circuit by filing in this Court a notice of appeal within **30 days** of the entry of judgment. *See* Fed. R. App. P. 3, 4. This Court may extend this deadline if a party timely requests an extension and shows good cause or excusable neglect for not being able to meet the 30-day deadline. *See* Fed. R. App. P. 4(a)(5)(A). If Plaintiff appeals, he will be liable for the $605.00 appellate filing fee regardless of the appeal's outcome. If Plaintiff seeks leave to proceed *in forma pauperis* on appeal, he must file a motion for leave to proceed *in forma pauperis* with this Court. *See* Fed. R. App. P. 24(a)(1). Plaintiff may be assessed another "strike" by the Court of Appeals if his appeal is found to be non-meritorious. *See* 28 U.S.C. §1915(g). If Plaintiff accumulates three strikes, he will not be able to file an action in federal court (except as a petition for habeas corpus relief) without prepaying the filing fee unless he demonstrates that he is in imminent danger of serious physical injury. *Id.*

Under certain circumstances, a party may ask this Court to alter or amend its judgment under Federal Rule of Civil Procedure 59(e) or ask for relief from judgment under Federal Rule of Civil Procedure 60(b). Any motion under Federal Rule of Civil Procedure 59(e) must be filed within **28 days** of the entry of judgment. Any motion under Federal Rule of Civil Procedure 60(b) must be filed within a reasonable time, generally no more than one year after the entry of judgment. The Court cannot extend these deadlines. *See* Fed. R. Civ. P. 6(b)(2).

A party is expected to closely review all applicable rules and determine, what, if any, further action is appropriate in a case.